UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61868-CIV-COHN/SELTZER

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

    Plaintiff,

vs.

GRACE & NAEEM UDDIN, INC.,
GRACIELA UDDIN and NAEEM UDDIN,

    Defendants.
_____/

## ORDER ON MOTION TO COMPEL

THIS CAUSE is before the Court on Defendant's Motion to Compel Production of Un-Redacted Documents and to Compel Supplemental Production (DE 50) and the Court being sufficiently advised, it is hereby ORDERED that the Motion is GRANTED for the reasons set forth below.

## BACKGROUND

On April 28, 2000, Defendant Grace & Naeem Uddin Inc. ("GNU") and non-party Florida Department of Transportation ("FDOT") entered into a contract for the construction of an addition to a building in Miami-Dade County, Florida ("the Lakeside Project"), and on September 26, 2001, GNU and the FDOT entered into a contract for the construction of another building in Miami-Dade County, Florida (the "Sunguide Project").  For each of these projects, Travelers, as surety, and on behalf of GNU, as principal, issued a Payment and Performance Bond.  As a condition precedent to issuing the bonds, the indemnitor

(GNU) executed a continuing General Agreement of Indemnity in favor of Travelers, in which GNU agreed to indemnify Travelers for any loss and/or expenses (including attorney's fees and costs) incurred in connection with the issuance of the Payment and Performance Bonds. GNU also agreed to post collateral with Travelers sufficient to cover any reserves for actual and/or potential losses incurred under the Bonds.

During the construction of these projects, issues arose between GNU and the FDOT concerning performance, which ultimately resulted in the FDOT declaring GNU in default of its contracts. Travelers originally planned to perform corrective work on both projects and signed Takeover Agreements with the FDOT, by which Travelers became obligated to complete warranty items and to correct latent defects. Travelers, however, did not perform any corrective work. The FDOT then filed two actions in state court against GNU and Travelers; the FDOT asserted claims for breach of contract against GNU, claims against the Performance and Payment Bonds against both GNU and Travelers, and claims for breach of the Takeover Agreements against Travelers. Travelers made a collateral demand upon GNU to reimburse it for any expenses and/or losses it incurred as a result of the FDOT's claims.

Thereafter, Travelers filed the instant action against GNU. The Complaint alleges that as of November 2008, Travelers has incurred loss adjustment expenses (including expenses associated with experts, consultants, and attorneys) associated with its defenses and/or handling of claims against the Performance and Payment Bonds in excess of $712,950. In addition to damages, Travelers seeks to require GNU to provide collateral sufficient to exonerate Travelers for its potential loss and expenses. During the course of

this litigation, the state Lakeside litigation was settled (without any contribution from Travelers); the Sunguide litigation, however, is on-going.

### MOTION TO COMPEL PRODUCTION OF UN-REDACTED DOCUMENTS

The Indemnity Agreement between Travelers and GNU provides that "[a]n itemized statement thereof sworn to by an employee of the Company [Travelers] or a copy of the voucher payment shall be prima facie evidence of the propriety and existence of Indemnitor's liability.  The Company shall be entitled to reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments." Indemnity Agreement, ¶ 4 (DE 23-2).  One court in this District has noted that "courts have consistently held that the surety is entitled to reimbursement pursuant to an indemnity contract for any payments made by it in *a good faith belief that it was required to pay*, regardless of whether any liability actually existed." Employers Inc. of Wausau v. Able Green, Inc., 749 F. Supp. 1100, 1103 (S.D. Fla. 1990) (emphasis in original).

Pursuant to GNU's Request for Production, Travelers produced the invoices that had been sent to Travelers through 2008 by its attorneys, Etcheverry Harrison, and a consultant, Qualex Consulting Group ("Qualex") (and the consultant's employee, Edward Mackowiak). Before production to GNU, Travelers redacted a portion of some time entries on these invoices.  According to GNU, the redacted matters relate to correspondence between attorneys at the Etchevarry firm and Qualex and between Travelers and Qualex. For example, a June 2, 2005 time entry states:  "Review documents received from St. Paul [Travelers]," with the rest of the entry redacted.  And a Jan. 13, 2006 time entry for 2.2 hours states: "Receive e-mails from Qualex," with the rest of the entry redacted.  See June

30, 2005 invoice (DE 50-1) and March 6, 2006 invoice (DE 50-2) containing redacted entries. GNU argues that because the redacted information pertains to the subject matter of the entries, it is unable to determine whether the redacted entries "demonstrate any unreasonableness in the billing and/or whether Travelers had a good faith belief in making payments that the amounts were due for this work" Motion at 2 (DE 50). GNU now moves the Court to compel Travelers to produce unredacted copies of all invoices.

Travelers contends that the time entries it redacted describe work or communications involving its attorneys and/or its consultant Mackowiak/Qualex and, therefore, these time entry descriptions are protected by the attorney-client privilege and/or work product doctrine. It argues that revealing the redacted, privileged portions of the time entries would threaten the resolution of the ongoing Sunguide Project state case by placing privileged thoughts, opinions, and mental impressions into the public domain, making them accessible to non-party FDOT.

Assuming that the redacted portions of the invoices reflect attorney-client and/or work product privileged information, the Court find that Travelers has impliedly waived any such privileges. "Implied waiver of the attorney-client privilege can occur where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications. This type of waiver is often referred to as 'at issue' waiver." Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc., 176 F.R.D. 269, 272 (N.D. Ill. 1997) (internal citation omitted). The court in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), set forth three elements to consider when determining whether an implied or at-issue waiver of a privilege has

4

occurred: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to the information vital to his defense."  Id. at 581.  "[W]here these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct."  Id.  The Hearn test applies "'even if the privilege holder does not attempt to make use of a privileged communication,' that is an implied waiver will be found if the privilege holder asserts a position, 'the truth of which can only be assessed by examination of the privileged communication.'"  Union County Iowa v. Piper Jaffray & Co., Inc., 248 F.R.D. 217, 220 (S.D. Iowa 2008) (quoting In re Kidder Peabody Secs. Litig., 168 F.R.D. 459, 470 (S.D.N.Y 1996)); see also Perira v. United Jersey Bank, No. 94 Civ. 1565, 1997 WL 773716, at *4 (S.D.N.Y. 1997) ("[I]mplied waiver under Hearn will lie where a party asserts a position the truth of which can only be assessed by examination of the privileged communication.").  "A primary consideration in determining whether an implied waiver has occurred is fairness. . . .  Union County, 248 F.R.D. at 224 (citing Sedco Int'l v. Cory, 683 F.2d 1201 (8th Cir. 1982)) ("[a] waiver is to be predicated . . . when the conduct . . . places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege") (quoting 8 J. Wigmore, Evidence, § 2388, at 855); see also Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, No. 95 Civ. 8833, 1997 WL 801454, at *1 (S.D.N.Y. Dec. 31, 1997) (waiver "of either the lawyer-client or work product privilege is designed to assure fairness to litigants.") .

An at-issue waiver not only waives the attorney-client privilege, but also work product protection. See McGrath v. Nassau County Health Care Corp., 204 F.R.D. 240, 244 (E.D.N.Y 2001) ("Parties may waive any work product protection by putting the privileged information at issue. . . . [They] waive the work product privilege for certain documents by asserting claims which in fairness require examination of the documents."); Tribune Co. v. Purcigliotti, No. 93 Civ. 7222 LAP THK, 1997 WL 10924, at *6 (S.D.N.Y. Jan. 10, 1997) (ruling that at-issue waiver doctrine applies to both the attorney-client privilege and the work product doctrine).

"Implied waivers are consistently construed narrowly. Courts 'must impose a waiver no broader than needed to insure the fairness of the proceedings before it. . . . A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.'" Clevenger v. Dillard's Dep't Stores, Inc., No. 1:02-cv-558, 2007 WL 127978, at *4 (S.D. Ohio Jan. 11, 2007) (quoting Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003)); see also McGrath, 204 F.R.D. at 243 ("[T]he scope of [an implied] waiver is defined by the context of the waiver and the prejudice to the other party that limiting the waiver would cause.").

The decision in Equitable Production Co. v. Elk Run Coal Co., Inc., No. 2:08-cv-00076, 2008 WL 5263735 (S.D. W. Va. Oct. 3, 2008) is instructive. In Equitable, as part of its damages, the plaintiff sought to recover attorney's fees and consultant fees incurred as a result of mining operations pursuant to a contractual indemnification agreement. The plaintiff produced redacted copies of all invoices that supported its damages claim, and

6

the defendant moved to compel complete, unredacted invoices. In opposing the motion to compel, the plaintiff contended that the redacted portions were protected from disclosure by the attorney-client privilege and the work product doctrine. Although the plaintiff acknowledged that the attorney-client privilege did not extend to invoices that described in general terms the nature of the services performed, it argued that revealing the redacted information on the invoices would disclose such privileged information as litigation strategy and specific areas of factual investigation and/or legal research performed by its counsel and consultant. According to the court, when producing the attorney and consultant invoices as part of its Rule 26(a) disclosures, the plaintiff had clearly indicated that it would rely on the invoices as part of its damages; "as such [the plaintiff had] squarely placed them in issue and waived any applicable protections." Id. at *4.

In reaching its decision, the Equitable Court relied on Ideal Electronic Security Co., Inc. v. International Fidelity Insurance Co., 129 F.3d 143 (D.C. Cir. 1997). Ideal involved a claim under an indemnity agreement by a surety company against the holders of a payment bond. Under the payment bond, the holders had agreed to indemnify the surety company against any losses or expenses, including attorney's fees, incurred in defending against claims arising under the bond. The surety company sought to recover the attorney's fees it had incurred in defending against the claims arising under the bond. The appellate court held that the trial court had abused its discretion in failing to require the surety company to disclose unredacted portions of the billing statement. The court explained that "by claiming indemnification of attorney's fees . . . and offering the billing

statements as evidence of same, the surety company waived its attorney-client privilege with respect to the redacted portions of the billing statements . . . going to the reasonableness of the amount of the fee award." Id. at 152.

Here, as did the plaintiffs in the Equitable and Ideal cases, Travelers is seeking attorney and consultant fees as part of their damages. In support of its claims, Travelers intends to rely on the invoices sent to it by its counsel and its consultant to evidence its alleged damages. And it has produced those invoices, albeit redacted, to GNU. The Court, therefore, finds that by seeking indemnification for attorney and consultant fees and by relying on the attorney and consultant invoices as evidence of its alleged damages, Travelers has impliedly waived any attorney-client and/or work product privilege with respect to the redacted portions of the invoices by putting them at issue. As the court in Equitable aptly stated in requiring production of unredacted attorney and consultant invoices: "Simply put, a party may not attempt to recover damages for a particular type of loss and then refuse to produce the evidence of that alleged loss for thorough examination and testing by the opposing party." 2008 WL 5263735, at *6.

Although the parties dispute what Travelers must show to prove its damages with respect to recovery of attorney and consultant fees,[1] under the Indemnity Agreement upon which Travelers relies, Travelers is only entitled to reimbursement of such fees if it paid the invoices "under the belief it was necessary or expedient to make such payment."

---

[1] See Travelers' Motion for Partial Summary Judgment (DE 53) and GNU's Memorandum in Opposition (DE 63) for the parties' respective positions. Travelers' summary judgment motion is pending before the District Judge; in ruling on the instant motion, this Court makes no ruling on the proper standard.

8

Indemnity Agreement, ¶ 4 (DE 23-2).  And under the <u>Able Green</u> decision, upon which Travelers also relies, Travelers is entitled to reimbursement under the Indemnity Agreement if it paid the attorney and consultant invoices in a "good faith belief that it was required to pay." 749 F. Supp. at 1103.  Therefore, at a minimum, GNU is entitled to know the subject matter of the redacted time entries to test whether it was necessary or expedient for Travelers to pay the invoices and/or whether Travelers had a good faith belief that it was required to pay the invoices.[2]

Accordingly, it is hereby ORDERED that on or before October 30, 2009, Travelers shall produce to GNU unredacted copies of all attorney and consultant invoices.  To allay Travelers' concern that disclosure of the redacted portions of the invoices would place privileged information into the public domain, making it accessible to the FDOT and threatening the resolution the ongoing Sunguide Project state case, it is further ORDERED that the parties shall treat the redacted information as confidential and use it for purposes of this litigation only.

## MOTION TO COMPEL SUPPLEMENTAL PRODUCTION

GNU additionally requests that the Court require Travelers to supplement its responses to its Request for Production by producing its attorneys and consultant invoices for services rendered after 2008.  <u>See</u> Federal Rule of Civil Procedure 26(e) (requiring supplementation of Rule 26(a) disclosures or responses to discovery requests where the disclosure is incomplete or incorrect).  Travelers responds that it will produce the 2009

---

[2] GNU argues that it is also entitled to test the reasonableness of the attorney and consultant fees paid by Travelers.

invoices. Accordingly, it is hereby ORDERED that on or before October 30, 2009, Travelers shall produce all invoices of its attorneys' and consultant for services rendered to date. Travelers shall not redact any portion of these invoices.

DONE AND ORDERED in Fort Lauderdale, Florida, this 23rd day October 2009.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record