UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61868-CIV-COHN/SELTZER

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

      Plaintiff,

vs.

GRACE & NAEEM UDDIN, INC.,
GRACIELA UDDIN and NAEEM UDDIN,

      Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADINGS

**THIS CAUSE** is before the Court on Plaintiff's Motion for Partial Summary Judgment [DE 53], Defendants' Motion for Partial Summary Judgment [DE 52] and Plaintiff's Motion for Leave to File Supplemental Pleadings [DE 62]. The Court has considered the Motions, the parties' related submissions, the record in this case, and is otherwise advised in the premises.

### I. MATERIAL FACTS

**A.    Lakeside Project**

1.    On or about April 28, 2000, Grace & Naeem Uddin, Inc. ("GNU"), as general contractor, entered into a contract with the State of Florida Department of Transportation ("FDOT"), as owner, to construct an addition to the FDOT's office building located at 1000 N.W. 111 Avenue in Miami, Florida (the "Lakeside Project").

2.    On or about April 13, 2000, Travelers Casualty and Surety Company of America ("Travelers"), as surety, and on behalf of GNU, as principal, issued separate and

distinct Payment and Performance Bonds (collectively, the "Lakeside Bonds") in connection with the FDOT contract.

3. During the construction of the Lakeside Project, issues arose between GNU and FDOT concerning performance, including but not limited to issues related to the completion of warranty items and/or the correction of latent defects.

4. As a result of such issues, on or about December 21, 2004, FDOT declared GNU in default of its contract on the Lakeside Project and made demand upon Travelers to satisfy its obligations under the Lakeside Bonds.

5. On or about June 17, 2005, FDOT and Travelers entered into a Takeover Agreement, pursuant to Travelers' Obligations under the Lakeside Bonds, in which Travelers became obligated to complete warranty items and/or correct latent defects under the Lakeside contract ("Lakeside Takeover Agreement").

**B.    Sunguide Project**

6. On or about September 16, 2001, GNU, as general contractor, entered into a contract with FDOT, as owner, for the construction of the FDOT's Sunguide Control.

7. On or about September 5, 2001, Travelers, as surety, and on behalf of GNU, as principal, issued a Payment and Performance Bond (collectively, "Sunguide Bonds") in connection with the FDOT contract.

8. During the construction of the Sunguide Project, issues arose between GNU and FDOT concerning performance, including but not limited to issues related to the completion of warranty items and/or the correction of latent defects.

9. As a result of such issues, on or about May 2, 2005, FDOT declared GNU in default of its contract on the Sunguide Project and made demand upon Travelers to

satisfy its obligations under the Sunguide Bonds.

10. On or about June 17, 2005, FDOT and Travelers entered into a Takeover Agreement, pursuant to Travelers' Obligations under the Sunguide Bonds, in which Travelers became obligated to complete warranty items and/or correct latent defects under the Lakeside contract ("Sunguide Takeover Agreement").

### C. Indemnity Agreement

11. As a condition precedent to issuing the Lakeside Bonds and Sunguide Bonds, on or about May 22, 1998, Travelers and GNU entered into a General Agreement for Indemnity in favor of Travelers ("Indemnity Agreement").

12. Paragraph 3 of the Indemnity Agreement provides:

> <u>Indemnification and Hold Harmless</u>  The Indemnitor shall exonerate, indemnify and save the Company harmless from and against every claim, loss, damage, demand, liability, cost, charge, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having executed, or procured the execution of such Bonds.  Expense includes the cost of procuring or attempting to procure release from liability, or in bringing suit to enforce this Agreement against any Indemnitor.

13. Paragraph 4 of the Indemnity Agreement provides:

> <u>Claim Settlement</u>  The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitor whether any claim or suit brought against the Company or the Indemnitor upon any such Bond shall be paid, compromised, settled, defended or appealed, and its decision shall be binding and conclusive upon the Indemnitor.  An itemized statement thereof sworn by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of Indemnitor's liability. The Company shall be entitled to reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

### D. Claims and Litigation

14. The FDOT asserted claims against GNU and Travelers pursuant to the Lakeside Bonds and the Sunguide Bonds.

15. The issues at both the Lakeside Project and Sunguide Project related to water intrusion.

16. GNU'S attorney has served as lead counsel on both the Lakeside and Sunguide matters. Travelers' counsel has also served as counsel and participated in depositions and discovery.

17. The Lakeside matter was resolved in November 2008, with a settlement payment to FDOT in the amount of $1,100,000.

18. Travelers did not contribute any money to the settlement of the Lakeside matter.

19. The Sunguide matter is still pending.

   **E.   Demands**

20. Travelers sent an email on June 13, 2005 requesting that Defendants indemnify and exonerate Travelers pursuant to the Indemnity Agreement.

21. The email was sent by Richard Bostwick to Warren Alter, the bond broker who executed the Bonds at issue for Travelers. Defendant Naeem Uddin was copied on the email. The email states that Travelers would be entering into takeover agreements on both the Lakeside Project and Sunguide Project and would be "incurring substantial completion expenses in utilizing [Qualex Consulting Group]." Travelers requested that "principal provide $500,000.00 in an ILOC."

22. To date, Travelers has received only a $50,000 indemnity payment from GNU.

23. In a letter dated August 20, 2008, Travelers made a subsequent demand on the Defendants demanding that Defendants provide Travelers with $952,733 as collateral as to the Lakeside Project. In addition, the letter stated "that once FDOT's damages became ascertainable, Travelers [would] be requesting collateral for the Sunguide Project."

24. On October 2, 2009, Travelers, for the first time, received a written demand from FDOT seeking to recover $3,200,000 against Travelers under the Sunguide Bond.

25. Thereafter, Travelers immediately issued a demand that Defendants tender $3,200,000 for collateral for the Sunguide Project.

   **F.   Expenses**

26. As of September 3, 2009, Travelers has incurred unpaid losses and loss adjustment expenses (including but not limited to expenses associated with experts, consultants and attorneys) associated with its investigation, defense and/or handling of the pending claims against the Lakeside Bond and the Sunguide Bond in the amount of $951,048.88.

27. Travelers' attorneys billed Travelers for a total of 235.8 hours for the preparation for and attendance at mediation in connection with the Lakeside matter.

28. Pursuant to Paragraph 5 of the Takeover Agreements, Qualex Consulting Group ("Qualex") was to be utilized by Travelers to coordinate and oversee the corrective work at the Lakeside Project and the Sunguide Project. The Agreement states:

> The Department acknowledges that the Surety will be represented at the Project by Qualex Consulting Group, 4311 West Waters Avenue, Suite 304, Tampa, Fl 33614 [ ] and that the Surety will arrange for Qualex to coordinate the work for completion of the warranty items and/or correction of the latent defects in the Project by and in accordance with the terms and conditions of the Original Contract. Qualex shall be authorized to take such acts on behalf of surety as may be necessary for the administration and performance of the Original Contract.

29. On or about August 7, 2007, Qualex began performing paralegal work including reviewing deposition transcripts, reviewing documents, reviewing motions, reviewing discovery responses, preparing deposition questions, and eventually attending mediation in connection with the Lakeside mediation.

30. Ed Mackowiak, President of Qualex, billed Travelers a total of 210.9 hours for

the preparation for and attendance at mediation in connection with the Lakeside matter.

31.   Mr. Mackowiak has no legal background.

32.   Mr. Mackowiak specializes in mechanical work.  Mr. Mackowiak is not an expert in water penetration or permeability issues.

33.   In total, Mr. Mackowiak billed Travelers for 1,689.1 hours relating to the Lakeside matter for which Travelers paid a rate of $125 per hour.

34.   Mr. Mackowiak billed Travelers 830.5 hours for document review and research relating to the Lakeside matter.

35.   Mr. Mackowiak billed Travelers for 115.6 hours related to the window issues on the Lakeside matter.

36.   Mr. Mackowiak billed Travelers for 504.3 hours of paralegal work relating to the Lakeside matter.

37.   Through December 2008, Mr. Mackowiak billed Travelers for 442.4 hours relating to the Sunguide matter for which Travelers paid a rate of $125 per hour.

38.   Through December 2008, Mr. Mackowiak billed Travelers 279.9 hours for document review and research relating to the Sunguide matter.

39.   Mr. Mackowiak billed Travelers for 105.5 hours of travel related to the Lakeside project.

40.   Through December 2008, Mr. Mackowiak has billed Travelers for 53.6 hours for travel related to the Sunguide project.

## II. LEGAL STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Rule 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. Further, "the general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).

Rule 56(e) requires that "affidavits" that support or oppose summary judgment motions "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." "This rule also applies to testimony given on deposition." Macuba, 193 F.3d at 1323 (citation omitted). At a minimum, to be considered on a motion for summary judgment, the information must have the potential to be "reduced to admissible evidence at trial." Pritchard v. Southern Co. Services, 92 F.3d 1130, 1135 (11th Cir. 1996).

Essentially, so long as the non-moving party has had an ample opportunity to

conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### III. ANALYSIS

1. **Plaintiff's Motion for Partial Summary Judgment**

Plaintiff asserts that, pursuant to the Indemnity Agreement, Plaintiff is entitled to partial summary judgment in the amount of $951,048.88. Plaintiff argues that the terms of the Indemnity Agreement and the law regarding sureties entitles Plaintiff "to indemnity for all payments made by it in good faith and under a belief that it might be liable regardless of whether actual liability exists." DE 53 at 3. In addition, Plaintiff argues that, as a matter of law, Defendants cannot establish that Plaintiff acted in bad faith. Moreover, Plaintiff takes the position that Defendants are precluded from even raising the issue of bad faith because Defendants failed to post collateral in response to Plaintiff's demand.

Defendants acknowledge that "Courts do indeed allow sureties discretion in making settlement payments in an effort to limit its future liability." DE 63 at 2. Nevertheless, Defendants argue that "this matter is not about a surety settling a claim to limit liability where collateral was not posted, this case is about a surety's wanton mounting of costs and fees in a case where it proffered no settlement funds whatsoever." Id. Defendants claim that Plaintiff "made payments to Qualex Consulting,

8

an unqualified and unlicensed consultant, absent any defined scope for Qualex's work and without oversight to determine if Qualex was billing for the same work that [Plaintiff's counsel] was billing." Id. at 3.  Finally, Defendants argue that if Plaintiff is entitled to indemnification, "it is only entitled to reasonable fees and costs.  The reasonableness of attorney's fees and costs under a contract for indemnity is a question of fact for the jury." Id.

### A. A Surety's Right to Settle Claims in Good Faith

It is well-settled that a surety may settle a claim in good faith, even where the principle is not liable for the underlying claim.  See, e.g., Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp., 534 F. Supp. 2d 1290, 1302-08 (S.D. Fla. 2008) (Gold, J.) (setting forth an exhaustive discussion of the issue).  "Sureties enjoy such discretion to settle claims because of the important function they serve in the construction industry, and because the economic incentives motivating them are a sufficient safeguard against payment of invalid claims." General Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp., 975 F. Supp. 511, 516 (S.D.N.Y. 1997).

It is also well-established that the only defense to indemnity of settlement claims is bad faith on the part of the surety.  See Liberty Mut. Ins. Co., 534 F. Supp.2d at 1319-20; Employers Ins. of Wausau v. Able Green, Inc., 749 F. Supp. 1100, 1103 (S.D. Fla. 1990).  To establish bad faith, an indemnitor must demonstrate that the surety acted with "deliberate malfeasance" which means "'an intentional wrongful act which the actor has no legal right to do, or any wrongful conduct which affects, interrupts, or interferes with the performance of official legal duty.'" Liberty Mut. Ins. Co., 534 F. Supp. 2d at 1316. (citing Employers Ins. of Wausau, 749 F. Supp. at 1103).  A "lack of diligence or negligence is not the equivalent of bad faith, and even gross negligence is not the same as bad faith." Employers Ins. of Wausau, 749 F. Supp. at 1103.

### B.   Plaintiff's Motion is Based on Fees and Expenses – Not a Settlement

The body of case law discussed above is largely based on circumstances where a surety is settling a claim in good faith. Here, Plaintiff's Motion is based on the argument that the same analysis should apply in the context of a surety disbursing payments for fees and expenses. The Court declines to adopt this reasoning for the reasons discussed below.

First, there are two provisions in the Indemnity Agreement that relate to this issue. Paragraphs 3 and 4 of the Indemnity Agreement read as follows:

> 3. <u>Indemnification and Hold Harmless</u>  The Indemnitor shall exonerate, indemnify and save the Company harmless from and against every claim, loss, damage, demand, liability, cost, charge, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having executed, or procured the execution of such Bonds. Expense includes the cost of procuring or attempting to procure release from liability, or in bringing suit to enforce this Agreement against any Indemnitor.
>
> 4. <u>Claim Settlement</u>  The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitor whether any claim or suit brought against the Company or the Indemnitor upon any such Bond shall be paid, compromised, settled, defended or appealed, and its decision shall be binding and conclusive upon the Indemnitor. An itemized statement thereof sworn by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of Indemnitor's liability. The Company shall be entitled to reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

Throughout its Motion, Plaintiff often relies on the language in Paragraph 4, which entitles Plaintiff "to reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments." This language is consistent with the case law above regarding the broad discretion a surety possesses in settling claims. The Court finds it significant, however, that this language is contained in the provision entitled "Claim Settlement."

Without similar language in Paragraph 3, the Court does not agree with the

10

Plaintiff that its right to be reimbursed for fees and expenses, which is traditionally governed under a reasonableness standard, should be governed by the far more lenient standard of good faith.  To do so, would allow the Plaintiff, through a lack of diligence or even gross negligence, to run up unreasonably high fees and expenses so long as the Plaintiff does not engage in deliberate malfeasance.

Courts have found that, even where it is not expressly stated, the concept of "reasonableness" must be applied to any claim for indemnification of attorney fees. See, e.g., Ideal Electronic Security Co., Inc. v. International Fidelity Insurance Company, 129 F.3d 143, 148-149 (D.C. Cir. 1997) ("courts in other jurisdictions have indicated that, as a general matter, a surety must show something akin to reasonable necessity when seeking attorney fees under an indemnity agreement") (emphasis in original); Neustrom v. Union Pacific Railroad Company, 156 F.3d 1057, 1068 (10th Cir. 1998) ("a duty to act reasonably must be read into every contract, including the terms of indemnification clauses").  Limiting fees and expenses to those which are reasonable ensures that a party is "not entitled to recover all costs and expenses regardless of the amount or the purpose." Air Turbine Technology, Inc. v. Atlas Copco AB, 2008 WL 544731, *2 (S.D. Fla. Feb. 26, 2008).

For example, in R. W. King Const. Co. v. City of Melbourne, 384 So.2d 654 (Fla. 5th DCA 1980), the court dealt with a hold harmless provision similar to that found in Paragraph 3 of the Indemnity Agreement.  In that case, "[t]he contractual agreement between the parties was that the contractor and its surety would indemnify and save the City harmless of and from ' . . . all costs, expenses and damages, including litigation costs and attorney's fees arising out of or in connection with . . .' any default by the contractor." Id. at 655.  The court "construe[d] the contractual obligation to be one for the payment of reasonable attorney's fees." Id.  Therefore, the Court finds that the

11

Plaintiff's right to reimbursement for fees and expenses is governed by a reasonableness standard.

### C. The Reasonableness of Plaintiff's Fees and Expenses is a Jury Question

Florida courts have held that "the question of reasonableness of the attorneys' fees under the contract of indemnity involved herein must be determined by a jury." Sork v. United Ben. Fire Ins. Co., 161 So. 2d 54, 56 (Fla. 3d DCA 1964) (citing Ronlee, Inc. v. P.M. Walker Co., 129 So. 2d 175 (Fla. 3d DCA 1961)). Here, the damage award that Plaintiff is seeking in its Motion is largely based on the fees and expenses incurred in connection with the litigation surrounding the Lakeside Project. This presents a different set of circumstances than a prevailing party requesting a court to rule on the reasonableness of fees and expenses incurred in a litigation which took place before the same court. Moreover, Defendants raise factual issues regarding the qualifications of Mr. Mackowiak and whether Plaintiff properly supervised and delineated the scope of the work of Qualex. Accordingly, the Court finds that the reasonableness of the fees and expenses shall be determined by a jury.

### 2. Defendants' Motion for Partial Summary Judgment and Plaintiff's Motion for Leave to File Supplemental Pleadings

Defendants' Motion seeks summary judgment on Count I of the Complaint, which seeks an Order directing Defendants to provide satisfactory collateral pursuant to the Indemnity Agreement. Defendants argue that Plaintiff "has no potential liability under the bond related to the Lakeside Project." DE 52 at 7. "The Lakeside matter was resolved in November 2008 and the case was dismissed with prejudice on May 14, 2009." Id. Plaintiff acknowledges this fact and states that Plaintiff's "Lakeside Project collateral demand is moot." DE 68 at 5.

Defendants argue that prior to October 2, 2009, Plaintiff never made a collateral demand in connection with the Sunguide Project. Defendants argue that the demand made in the June 13, 2005 email was "not specific to a project." DE 52 at 3. In addition, Defendants point to the August 20, 2008 letter which made a collateral demand in connection with the Lakeside Project. The letter goes on to state: "As to the Sunguide Project, Travelers will presently refrain from making a collateral demand as FDOT's damages are subject to change. Please be advised that once FDOT's damages become ascertainable, Travelers will be requesting collateral for the Sunguide Project."

In response, Plaintiff requests that the Court allow Plaintiff to file a Supplemental Complaint based on two recent events: (1) FDOT's October 2, 2009 demand against Plaintiff for $3,200,000 and (2) Plaintiff's subsequent collateral demand on Defendants in the same amount. "These occurrences are the basis for the proposed supplemental complaint and, because additional provision of the Indemnity Agreement upon which the Complaint was based are now at issue, some of the original allegations must be supplemented as well." DE 62 at 2. Plaintiff argues that the proposed pleading is directly related to the circumstances at issue in the original Complaint and that Defendants will not be prejudiced as they were put on notice that the collateral demand was forthcoming.

Defendants argue that they will be prejudiced by the filing of a Supplemental Complaint after the close of discovery and after Defendants had filed their Motion for Partial Summary Judgment. Defendants also point out that FDOT's demand was made in response to Plaintiff's request, a request which could have been made earlier. In light of the potential prejudice to Defendants, the Court finds that Plaintiff has failed to demonstrate good cause to allow an amendment of the pleadings at this late stage.

Therefore, the Court will deny Plaintiff's Motion for Leave to File Supplemental Pleadings.

Plaintiff argues that a genuine issue of material fact exists regarding whether Plaintiff made a collateral demand in connection with the Sunguide Project even without the October 2, 2009 demand. Plaintiff does not point to evidence in support of the argument. Further, in the August 20, 2008, Plaintiff states that "[a]s to the Sunguide Project, Travelers will presently refrain from making a collateral demand as FDOT's damages are subject to change." Accordingly, the Court will grant Defendants' Motion for Partial Summary Judgment as to Count I of the Complaint.

## IV. CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Partial Summary Judgment [DE 52] is **GRANTED**.
2. Plaintiff's Motion for Summary Judgment [DE 53] is **DENIED**.
3. Plaintiff's Motion for Leave to File Supplemental Pleadings [DE 62] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 18th day of November, 2009.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF

14